IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| BRIAN MCDANIEL, | ) |
| | ) |
|        Plaintiff, | ) |
| | ) |
| vs. | )   Case No. 10–cv–0783–MJR–SCW |
| | ) |
| DR. BIRCH,[1] | ) |
| | ) |
|        Defendants. | ) |

# REPORT & RECOMMENDATION

**WILLIAMS, Magistrate Judge:**

      This § 1983 Eighth Amendment case stems from *pro se* Plaintiff Brian McDaniel's allegations that Dr. Kimberly Birch, in retaliation for McDaniel's complaints about his medical care, acted with deliberate indifference toward injuries McDaniel sustained when he fell from a prison roof in late 2009. The case comes before the Court on Dr. Birch's Motion for Summary Judgment (Doc. 43). The matter has been referred to United States Magistrate Judge Stephen C. Williams by United States District Judge Michael J. Reagan pursuant to 28 U.S.C. §§ 636(b)(1)(B) and (C), Federal Rule of Civil Procedure 72(b), and Local Rule 72.1(a) for a Report and Recommendation on whether McDaniel exhausted his administrative remedies before filing suit. For the following reasons, it is **RECOMMENDED** that Defendant Birch's motion (Doc. 43) be **GRANTED,** and that the claims against Birch be **DISMISSED without prejudice**.

---

[1] As the pleadings and motions have made clear, "Dr. Birch" is actually Kimberly Birch, the Medical Director at Vienna Correctional Center. (*See* Doc. 33, p. 2 ¶ 7). For the sake of clarity, the Clerk is therefore DIRECTED to amend the docket by striking "Dr. Birch" and adding "Kimberly Birch."

1

**PROCEDURAL AND FACTUAL BACKGROUND**

In 2009, McDaniel was incarcerated at Vienna Correctional Center, where he served on work detail as a carpenter. According to his Second Amended Complaint, while working on a roof in November 2009, McDaniel fell fifteen feet and injured his back, hip, shoulder, big toe, and teeth, and developed a seizure disorder. About a week later, McDaniel claims, Dr. Kimberly Birch — retaliating against McDaniel for complaining about deficiencies in his medical care — acted with deliberate indifference to McDaniel's resulting injuries by taking away his crutches and refusing him treatment for his pain.

McDaniel was released from Vienna in late December 2009, about 35 days after his fall. (Doc. 3, p. 1). He was a free man for some of 2010, but by the date he filed the instant suit — October 8, 2010 — McDaniel was incarcerated on a different charge (though at Dixon Correctional Center rather than Vienna). (*Id.*). He did not name Dr. Birch as a defendant until May 27, 2011, when he filed his Second Amended Complaint. (Doc. 13). Pursuant to 28 U.S.C. § 1915A, District Judge Reagan performed a preliminary review of McDaniel's claims (which included Birch and two other defendants) on June 13, 2011. (Doc. 14). McDaniel's deliberate indifference and retaliation claims against Birch were the only claims to survive threshold. (*Id.*).

The instant motion was filed on March 2, 2012, and ripened upon McDaniel's response on April 30, 2012. Birch's argument is twofold: that McDaniel did not exhaust his administrative remedies as required by the Prison Litigation Reform Act ("PLRA," 42 U.S.C. § 1997e(a)) because any relevant grievances filed by McDaniel were untimely filed and never appealed, and (alternatively) that the substance of McDaniel's grievances was insufficient to satisfy the exhaustion requirement. McDaniel counters with a threefold argument: that the instant suit is not subject to the PLRA's exhaustion requirement, that he should be allowed to avoid the grievance

process because his allegations stem from a continuing tort, and that his suit should proceed because he "can still utilize" Illinois' grievance procedure.

### MCDANIEL'S GRIEVANCES

McDaniel grieved in writing to Dixon's Grievance Officer in September 2010 (Doc. 13, p. 15). In the one-page long September grievance, McDaniel asserts the following:

> On Nov. 3rd 09 I was working on a roof in Vienna CC. There was improper fall prevention safety apparatus on the roof and I fell. I injured my arm, hip, shoulder, back, and chipped teeth and broke my partial. I only had 35 days left and was released. I am contending that there should not have been inmates placed in harms way and that the IDOC still owes me medical treatment. All that was done were x-rays, which showed no broken bones. But I have severe pain and require treatment [sic].[2]

(*Id.*). Vienna's Grievance Officer denied McDaniel's September grievance by checking two boxes: "Not submitted in a timely manner; issue is over two months old," and "No justification for further consideration." Birch asserts that McDaniel never appealed the grievance officer's decision. (Doc. 43-1, p. 2 ¶ 6; Doc. 43-1, p. 7). McDaniel not only leaves that assertion undisputed, he admits in his response brief that the September grievance "is not at all related to [his] complaint against Dr. Birch." (Doc. 55, p. 7). Defendant also submits two grievances from October 2011 — a year after this action was brought to federal court. (Doc. 43-1, pp. 8–13). McDaniel's 2011 grievances do pertain to his medical treatment, insofar as he complains about the discontinuation of seizure medication. (*Id.*). But like the September 2010 grievance, the October 2011 grievances contain no mention of Dr. Birch (or, for that matter, any medical treatment relating to his time at Vienna Correctional Center).

The final grievance on the record contains a much more comprehensive description of McDaniel's medical treatment subsequent to his fall, and addresses Dr. Birch's interactions with McDaniel in late 2009. (Doc. 55-3, pp. 38– 39; Doc. 55-4, pp. 3–4). The most recent grievance is

---

[2] McDaniel's complaints (Docs. 1, 9, and 13) originally contained negligence claims against officials who were supervising his work as a carpenter. The negligence claims, which largely parallel the contents of McDaniel's September grievance, were dismissed by Judge Reagan's threshold order. (Doc. 14, pp. 7–9).

dated with a handwritten note that indicates it was "sent to [the] ARB on 3-30-12,"[3] over seventeen months after McDaniel filed suit, and over three weeks after Birch filed her summary judgment motion. (Doc. 55-4, 2). There is no indication the March 2012 grievance has been received or ruled upon by any state body.

Having thoroughly reviewed the parties' arguments and the entire record, the undersigned **RECOMMENDS** as follows.

### LEGAL STANDARDS

1. *Summary Judgment Standard*

Summary judgment — which is governed by FEDERAL RULE OF PROCEDURE 56 — is proper only if the admissible evidence considered as a whole shows there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. ***Dynegy Mktg. & Trade v. Multiut Corp.*, 648 F.3d 506, 517 (7th Cir. 2011) (citing FED. R. CIV. P. 56(a)).**[4] The party seeking summary judgment bears the initial burden of demonstrating — based on the pleadings, affidavits and/or information obtained via discovery — the lack of any genuine issue of material fact. ***Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).**

After a properly supported motion for summary judgment is made, the adverse party "must set forth specific facts showing that there is a genuine issue for trial." ***Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). See also Serednyj v. Beverly Healthcare, LLC, 656 F.3d 540, 547 (7th Cir. 2011) ("When a summary judgment motion is submitted and supported by evidence . . . the nonmoving party may not rest on mere allegations or denials in its pleadings")**. A genuine issue of material fact exists if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. ***Anderson*, 477 U.S. at 248.** A mere scintilla of

---

[3] Illinois grievance procedures allow direct review by the ARB where, as here, an inmate grieves of issues that pertain to a facility other than the facility where the offender is currently assigned. **20 Ill. Admin. Code § 504.870(a)(4).**
[4] Though Rule 56 was amended in 2010, the amendment did not change the summary judgment standard. ***Sow v. Fortville Police Dept.*, 636 F.3d 293, 300 (7th Cir. 2011)**.

evidence supporting the non-movant's position is insufficient; a party will successfully oppose summary judgment only when it presents definite, competent evidence to rebut the motion. ***Albiero v. City of Kankakee*, 246 F.3d 927, 931–32 (7th Cir. 2001). *See also Steen v. Myers*, 486 F.3d 1017, 1022 (7th Cir. 2007) ("[S]ummary judgment is . . . the put up or shut up moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of the events") (internal quotation marks omitted).** In other words, there is "no genuine issue of material fact when no reasonable jury could find in favor of the nonmoving party." ***Van Antwerp v. City of Peoria*, 627 F.3d 295, 297 (7th Cir. 2010). *Accord Anderson*, 477 U.S. at 248 (material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party).**

Finally, the Court's role on summary judgment is not to evaluate the weight of the evidence, to judge witness credibility, or to determine the truth of the matter, but rather to determine whether a genuine issue of triable fact exists. ***Nat'l Athletic Sportswear, Inc. v. Westfield Ins. Co.*, 528 F.3d 508, 512 (7th Cir. 2008).** The Court considers the facts in a light most favorable to the non-movant — here, McDaniel. ***Srail v. Vill. of Lisle*, 588 F.3d 940, 948 (7th Cir. 2009).**

### 2. *PLRA's Exhaustion Requirement*

Lawsuits filed by prisoners are governed by 42 U.S.C. § 1997e, the Prison Litigation Reform Act ("PLRA"). The PLRA states, in pertinent part, that "no action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, *by a prisoner confined in any jail, prison, or other correctional facility* until such administrative remedies as are available are

exhausted. **42 U.S.C. § 1997e(a) (emphasis added).** [5] Failure to satisfy the PLRA's exhaustion requirement is an affirmative defense. **Pavey v. Conley, 544 F.3d 739, 740 (7th Cir. 2008).**

Where the defense has been raised, the Seventh Circuit has set forth the following recommendations:

> The sequence to be followed in a case in which exhaustion is contested is therefore as follows: (1) The district judge conducts a hearing on exhaustion and permits whatever discovery relating to exhaustion he deems appropriate. (2) If the judge determines that the prisoner did not exhaust his administrative remedies, the judge will then determine whether (a) the plaintiff has failed to exhaust his administrative remedies, and so he must go back and exhaust; (b) or, although he has no unexhausted administrative remedies, the failure to exhaust was innocent (as where prison officials prevent a prisoner from exhausting his remedies), and so he must be given another chance to exhaust (provided that there exist remedies that he will be permitted by the prison authorities to exhaust, so that he's not just being given a runaround); or (c) the failure to exhaust was the prisoner's fault, in which event the case is over. (3) If and when the judge determines that the prisoner has properly exhausted his administrative remedies, the case will proceed to pretrial discovery, and if necessary a trial, on the merits; and if there is a jury trial, the jury will make all the necessary findings of fact without being bound by (or even informed of) any of the findings made by the district court in determining that the prisoner had exhausted his administrative remedies.

**Id. at 742.** When — as here — purely legal issues (and undisputed facts) control the administrative remedies issue, no hearing is needed. **Doss v. Gilkey, 649 F. Supp. 2d 905, 912 (S.D. Ill. 2009).**

The Seventh Circuit requires strict adherence to the PLRA's exhaustion requirement. **Dole v. Chandler, 438 F.3d 804, 809 (7th Cir. 2006).** An inmate must take all the steps required by the prison's grievance system to properly exhaust his administrative remedies. **Ford v. Johnson, 362 F.3d 395, 397 (7th Cir. 2004); Pozo v. McCaughtry, 286 F.3d 1022, 1023–24 (7th Cir. 2002).** The purpose of exhaustion is to give prison officials an opportunity to address the inmate's claims internally, prior to federal litigation. **Kaba v. Stepp, 458 F.3d 678, 684 (7th Cir. 2006).** When officials have been afforded this opportunity, the prisoner has properly exhausted all available

---

[5] It is clear that complaints about a prisoner's medical treatment are complaints about prison conditions for the purposes of the PLRA. **Witzke v. Femal, 376 F.3d 744, 751 (7th Cir. 2004) (citing Wilson v. Weiter, 501 U.S. 294, 299 n. 1 (1991) ("if an individual prisoner is deprived of needed medical treatment, that is a condition of his confinement")).**

remedies. *Id.* If prison administrators explicitly rely on a procedural shortcoming (like failing to follow the prison's exhaustion deadlines) in rejecting a prisoner's grievance, that procedural shortcoming amounts to a failure to exhaust. ***Maddox v. Love*, 655 F.3d 709, 722 (7th Cir. 2011).**

The contours of the exhaustion requirement are set by each state's prison grievance system, so the Court looks to Illinois law for the procedures relevant to the instant motion. ***See Jones v. Bock*, 549 U.S. 199, 218 (2007).**

### 3. Exhaustion Requirement under Illinois Law

As an inmate confined within the Illinois Department of Corrections, McDaniel was required to follow the regulations contained in the Illinois Department of Corrections' Grievance Procedures for Offenders ("grievance procedures") to properly exhaust his claims. **20 Ill. Admin. Code § 504.800 et seq.** The grievance procedures first require inmates to speak with their Counselor about their complaint. **20 Ill. Admin. Code § 504.810(a)**. If the Counselor does not resolve the issue, the inmate must file a grievance form (directed to the Grievance Officer) within 60 days of the incident. *Id*. The grievance form must:

> contain factual details regarding each aspect of the offender's complaint, including what happened, when, where, and the name of each person who is subject of or who is otherwise involved in the complaint. The provision does not preclude an offender from filing a grievance when the names of individuals are not known, but the offender must include as much descriptive information about the individual as possible.

**20 Ill. Admin. Code § 504.810(b).** If the 60-day deadline has passed, the inmate is still invited to grieve: "[I]f an offender can demonstrate that a grievance was not timely filed for good cause, the grievance shall be considered." **20 Ill. Admin. Code § 504.810(a).**

"The Grievance Officer shall [then] consider the grievance and report his or her findings and recommendations in writing to the Chief Administrative Officer," who "shall advise the offender of the decision in writing within 2 months after receipt of the written grievance, where reasonably feasible under the circumstances." **20 Ill. Admin. Code § 504.830(d).** "If after

receiving the response of the Chief Administrative Officer, the offender still feels that the problem, complaint or grievance has not been resolved to his or her satisfaction, he or she may appeal in writing to the Director within 30 days after the date of the decision." **20 Ill. Admin. Code § 504.850(a)**. "The Administrative Review Board shall submit to the Director a written report of its findings and recommendations." **20 Ill. Admin. Code § 504.850(e).** "The Director shall review the findings and recommendations of the Board and make a final determination of the grievance within 6 months after receipt of the appealed grievance, where reasonably feasible under the circumstances. The offender shall be sent a copy of the Director's decision." **20 Ill. Admin. Code § 504.850(f)**.

## CONCLUSIONS OF LAW

The Court turns first to McDaniel's assertion that his claims against Dr. Birch are not subject to the exhaustion requirement. Only if McDaniel's claims are subject to the PLRA need the Court analyze whether McDaniel properly exhausted his administrative remedies

### 1. McDaniel's Suit is Subject to the PLRA

According to the plain language of the PLRA, "[n]o action shall be brought with respect to prison conditions under section 1983 . . . or any other Federal law, by a *prisoner* confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." **42 U.S.C. § 1997e(a) (emphasis added)**. McDaniel argues that his release from prison negated the exhaustion requirement because he is not a "prisoner" for PLRA purposes. Had he still been out of prison when he sued Dr. Birch, McDaniel may be correct. But he had returned to IDOC custody by the time he filed the instant suit.

Precedential caselaw is clear on the scope of a plaintiff's "prisoner" status for the purposes of the PLRA: it turns on whether the plaintiff was confined when the suit was filed. ***Witzke v. Femal*, 376 F.3d 744, 750 (7th Cir. 2004).** Thus, a former inmate was not a "prisoner"

when — while on parole — he brought a constitutional claim against prison officials. **Kerr v. Puckett, 138 F.3d 321, 323 (7th Cir. 1998)**. But a formerly incarcerated plaintiff was still a "prisoner" for PLRA purposes when he filed suit while in jail. **Jaros v. Ill. Dep't of Corr., -- F.3d ----, 2012 WL 2552125, at *1 n.1 (7th Cir. July 3, 2012) (formerly-incarcerated plaintiff still a "prisoner" because he was confined *when the suit was filed*).** The Seventh Circuit has explained why the distinction makes sense: "Congress deemed prisoners to be pestiferous litigants because they have so much free time on their hands and there are few costs to filing suit. Opportunity costs of litigation rise following release, diminishing the need for special precautions against weak suits." **Kerr, 138 F.3d at 323.**

Here, McDaniel was incarcerated when he sued Dr. Birch. No exception is made for prisoners who are released then re-incarcerated. **See Kerr, 138 F.3d at 323 ("The statutory language does not leave wiggle room").** McDaniel could have sued between his prison stints in late 2009 and early 2010 — a time when he may not have "had as much free time" and when his opportunity costs would have been higher. **See id.** But he did not. Instead, he sued after he was re-incarcerated, living in a situation with low opportunity costs and a lot of free time — the very situation contemplated by the PLRA.[6] He is therefore a "prisoner" for the purposes of the PLRA, and his claims are subject to the exhaustion requirement.

2. **McDaniel Failed to Exhaust**

So the Defendants' motion depends on whether or not McDaniel satisfied the exhaustion requirement. Exhaustion, while not jurisdictional *per se*, is a precondition to suit; grievances must be exhausted *before* federal litigation commences. **Perez v. Wis. Dep't of Corr., 182 F.3d 532, 535 (7th Cir. 1999); Ford v. Johnson, 362 F.3d 395, 398 (7th Cir. 2004).** Proper

---

[6] The Court notes that Mr. McDaniel has again been released from prison. (*See* Doc. 56, Plaintiff's Notice of Change of Address). But, as discussed above, it is McDaniel's status at the time suit was filed, not at any subsequent time, that triggers his status as "prisoner" for PLRA purposes.

exhaustion requires a plaintiff to take all the steps required by the prison's grievance system. **Ford, 362 F.3d at 397; Pozo v. McCaughtry, 286 F.3d 1022, 1023–24 (7th Cir. 2002).** An inmate who fails to take advantage of the prison system's available procedures fails to exhaust. **Cannon v. Washington, 418 F.3d 714, 718 (7th Cir. 2005)**.

McDaniel's October 2011 grievances contain no mention of Dr. Birch or his time at Vienna Correctional Center — they focus on other medical professionals at other correctional centers. As such, those grievances offered IDOC officials no opportunity to address McDaniel's instant claims internally, prior to federal litigation, and cannot suffice to exhaust his administrative remedies here. **See Kaba v. Stepp, 458 F.3d 678, 684 (7th Cir. 2006). See also 20 Ill. Admin Code § 504.810(b) (grievance must "contain factual details regarding each aspect of the offender's complaint").** That leaves McDaniel's September 2010 and March 2012 grievances as the only documents by which McDaniel could have exhausted his administrative remedies. The Court will take them in turn.

### A.  September 2010 Grievance

The PLRA's exhaustion requirement is satisfied when an inmate exhausts all *available* administrative remedies, so that prison officials can address an inmate's concerns internally before he sues. **42 U.S.C. § 1997e(a); Kaba v. Stepp, 458 F.3d 678, 684 (7th Cir. 2006); Cannon v. Washington, 418 F.3d 714, 718 (7th Cir. 2005).** As a preliminary matter, the Court notes McDaniel's position that his September 2010 grievance has nothing to do with the instant suit. (Doc. 55, p. 7). It is true that the September grievance does not mention Dr. Birch by name, but that is not always necessary: the IDOC's procedures do "not preclude an offender from filing a grievance when the names of individuals are not known, but the offender must include as much descriptive information about the individual as possible." **20 Ill. Admin. Code § 504.810(b).** McDaniel did make a minimum attempt, it would seem, to grieve his medical concerns: "All that was

10

done were x-rays, which showed no broken bones. But I have severe pain and require treatment." (Doc. 13, p. 15). But in the end, it matters little whether the September 2010 grievance was sufficient to give IDOC officials a chance to deal with McDaniel's concerns about Dr. Birch or not. In either case, McDaniel had administrative remedies available, but he failed to utilize them.

If McDaniel's September 2010 grievance was enough to make prison officials aware of his concerns about Dr. Birch, then McDaniel failed to exhaust because he never appealed the grievance. Proper exhaustion means that an inmate has taken *all* the steps required by the grievance system, including making a timely appeal to the ARB. **Ford v. Johnson, 362 F.3d 395, 398–400 (7th Cir. 2004). *See also* 20 Ill. Admin. Code § 504.850(a).** McDaniel failed to do so. He cannot, therefore, prevail here on a theory that the September grievance is related to his claims against Birch.

McDaniel is likewise out of luck if the analysis is controlled by his assertion that his September grievance has nothing to do with this case. McDaniel suggests that his full administrative remedies were not available because he was released from custody before his 60 days to grieve against Dr. Birch expired. But the grievance procedures invite a prisoner to file a grievance, even an untimely one: "[I]f an offender can demonstrate that a grievance was not timely filed for good cause, the grievance shall be considered." **20 Ill. Admin Code. § 504.810(a). *See also* Booth v. Churner, 532 U.S. 731, 738 (2001) ("available" simply requires the possibility of some relief for the action complained of.").** And even if McDaniel thought his grievance would be futile due to untimeliness, he was still required to try to exhaust his remedies before bringing suit. There is, after all, no futility exception in the PLRA's statutory exhaustion requirement. **Booth, 532 U.S. at 741 n. 6. *See also* Perez v. Wis. Dep't of Corr., 182 F.3d 532, 536 (7th Cir. 1999) ("No one can know whether administrative requests will be futile; the only way to find out is to try.").** McDaniel's suggestion that he never had to grieve against Birch falls under the weight of the

11

Seventh Circuit's directive in *Cannon v. Washington*, where a prisoner plaintiff failed to explain the delay in his grievance even though he was invited to do so. "By failing to take advantage of the procedure offered by the ARB . . . [h]e failed to exhaust." **Cannon v. Washington, 418 F.3d 714, 718 (7th Cir. 2005).**

In short, McDaniel had administrative remedies available after returning to IDOC custody in 2010. But he failed to pursue those remedies as they were available to him — either by grieving against Dr. Birch and providing good cause for his tardiness, or by appealing the September 2010 grievance to the ARB. McDaniel's failure to pursue his available remedies in late 2010 means that his chances at summary judgment depend on his March 2012 grievance.

### B. March 2012 Grievance

McDaniel's March 2012 grievance is the only remaining document by which he could have exhausted his administrative remedies. McDaniel hopefully points to the IDOC regulation that requires his grievance to be considered "if an offender can demonstrate that a grievance was not timely filed for good cause." **20 Ill. Admin. Code § 504.810(a)**. But it is the IDOC, not this Court, that assesses whether McDaniel has good cause for filing his grievance too late, and the IDOC has not had the opportunity to do so. McDaniel had to exhaust his grievances *before* filing suit, and he did not do so. Instead, he waited until after filing suit — and until after Dr. Birch raised the exhaustion defense via the instant motion — to draft a grievance that would allow prison officials a chance to address his complaints about Dr. Birch internally. When McDaniel filed the instant suit, prison officials had been provided with absolutely no opportunity to examine his complaints about Dr. Birch. He did not exhaust his administrative remedies. **See Perez, 182 F.3d at 537 ("a case filed before exhaustion has been accomplished must be dismissed."). See also Ford, 362 F.3d at 398 ("[I]t is essential to keep the courthouse doors closed until [administrative] efforts have run their course.").**

McDaniel's final hope is a slim one: he invokes the doctrine of "continuing violation" as an excuse for not having satisfied the PLRA's exhaustion requirement. That doctrine is an exception to the statute of limitations, not the PLRA. **See Heard v. Sheahan, 253 F.3d 316, 318–20 (7th Cir. 2001)**. The Seventh Circuit has articulated that "[d]eliberate indifference to a serious medical need is a continuing violation that accrues when the defendant has notice of the untreated condition and ends only when treatment is provided or the inmate is released." **Jervis v. Mitcheff, 258 F. App'x 3, 5–6 (7th Cir. 2007)**. But whether all McDaniel's claims have accrued is not at issue. This lawsuit is brought against Dr. Birch and Dr. Birch only, and not for a continuing tort: Birch's interactions with the plaintiff are limited to a discrete time period in late 2009. The PLRA "gives prisons and their officials a valuable entitlement — the right *not* to face a decision on the merits — which courts must respect" if the state chooses to invoke it. **Perez, 182 F.3d at 536.**

Under the PLRA, this Court cannot rule on the merits of McDaniel's case until the IDOC has had an opportunity to address McDaniel's complaints internally, or to invoke its right not to face a federal trial. That can only happen if McDaniel properly exhausts his grievances as to Dr. Birch, and he only started that process a few weeks after Dr. Birch moved for summary judgment. McDaniel has failed to exhaust his administrative remedies, so his claims against Defendant Birch should be **DISMISSED.**

## CONCLUSION

For the foregoing reasons, it is respectfully **RECOMMENDED** that Defendant Kimberly Birch's Motion for Summary Judgment (Doc. 43) be **GRANTED**, and that Plaintiff's claims against Defendant Birch be **DISMISSED without prejudice. See Ford v. Johnson, 362 F.3d 395, 401 (7th Cir. 2004) ("We . . . hold that *all* dismissals under [42 U.S.C.] § 1997e(a) should be without prejudice.") (emphasis in original).** Because there will remain no live controversy after McDaniel's claims are dismissed, the undersigned judge further

13

**RECOMMENDS** that McDaniel's two pending motions for preliminary injunction (Doc. 31 and Doc. 40), as well as Birch's motion for a HIPAA qualified protective order (Doc. 53) be found **MOOT**. And because no claims will remain, it is finally **RECOMMENDED** that the Clerk of Court be **DIRECTED** to enter final judgment in this action. Judgment shall be in favor of all Defendants and against Plaintiff McDaniel.

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 73.1(b), the parties may object to any or all of the proposed dispositive findings in this Recommendation. The failure to file a timely objection may result in the waiver of the right to challenge this Recommendation before either the District Court or the Court of Appeals. ***See, e.g., Snyder v. Nolen*, 380 F.3d 279, 284 (7th Cir. 2004).  Objections to this Report and Recommendation must be filed on or before August 13, 2012.**  *See* FED. R. CIV. P. 6(d); SDIL-LR 5.1(c).

    IT IS SO RECOMMENDED.
    DATE: <u>July 25, 2012</u>

                                                                 <u>/s/ *Stephen C. Williams*</u>
                                                                  **STEPHEN C. WILLIAMS**
                                                                  United States Magistrate Judge